MERRIMACK.

---

## FIRST NATIONAL BANK *v.* CONCORD.

A tax assessed against a national bank for " money on hand, at interest, or on deposit," will not be abated by the court on appeal because the words " surplus capital," used in the statute, were not employed by the assessors.

The undivided profits of a national bank, beyond the amount required by law to be kept as a surplus fund, are taxable, though invested in government bonds.

APPEAL from the refusal of the tax assessors of Concord to abate a tax assessed to the plaintiffs in 1878. April 1, 1878, the bank had undivided profits amounting to more than $40,000 beyond the surplus required by law to be kept, the same being invested in government bonds, then on deposit in the treasury of the United States. The city taxed the bank for its undivided profits and surplus thus invested, in this form, " Money on hand, at interest, or on deposit, $40,000," the sum of $730.

*Sargent & Chase,* for the plaintiffs.

I. The statute authorizes the taxation of the surplus capital on hand of banking institutions,—not their money on hand, at interest, or on deposit. Gen. St., *c.* 49, *s.* 5.

The tax in question, being assessed upon the plaintiffs' money on hand, at interest, or on deposit, was unauthorized by statute, and is therefore illegal, and should be abated.

It is a rule, universally adopted, that statues authorizing taxation must be strictly followed. In fact, all statutes authorizing the

taking of private property for public uses are so applied and con-
strued. The safety of individual rights requires that it should be
so. The individual presumably gives his assent to the statute as
adopted, and is willing to be bound by it, and to have his property
taken from him for public uses, in accordance with its term; but if
the court, by a forced, liberal, or equitable construction of the stat-
ute, takes his property from him, he can justly claim that it is
done without his assent, and is oppressive. And so courts, in
applying such statutes, keep within the letter of the law.

Under *s*. 11, *c*. 53 of Gen. St., it has been held that the court
are to make such orders upon petitions for abatement of taxes as
justice requires. *Mills* v. *Manchester*, 58 N. H. 38. This doctrine
has been applied only in those cases where the amount of the taxes
is in question, and not the manner of their assessment. Justice re-
quires that the law as it is written shall be administered. If a tax
has been assessed without authority, justice requires that it shall
be abated, although the person against whom it is assessed may be
liable to an equal amount of taxation upon other property which
has escaped taxation in some way.

II. In this case the plaintiffs' surplus capital, including undivid-
ed profits, at the time it was taxed, was invested in United States
bonds. Such investment exempts it from taxation.

Surplus capital is not an intangible, imaginary thing, but a sub-
stantial reality, existing either in money, notes, bonds, real estate,
or other tangible property. Its taxation is the taxation of proper-
ty existing in some form. It has an owner: we cannot conceive
of its existence without some owner. That owner may control it
as he may other kinds of property belonging to him, and may
change its form of existence or investment from time to time at
pleasure. Such owner may own other capital from which this sur-
plus has arisen—presumably does—and he may put his capital into
one kind of property and his surplus into another. He may invest
his surplus in property that is subject to taxation by the laws of
the land, or he may invest it in property that is exempt from such
taxation; in short, he may deal with it as he may with any other
of his absolute possessions. In this case the owner of this surplus
capital, whoever that owner may be, has seen fit to invest the same
in U. S. bonds; in other words, said surplus capital is U. S. bonds,
and *vice versa*.

The plaintiffs are the owners of the surplus capital in question,
or, which is the same thing, of the U. S. bonds in which it is in-
vested. The stockholders of said bank do not own any part of
such bonds, or any interest in them as such, but only a right to
their proportion of the net income of the entire property of the
bank and of its net assets, as before stated. And so the city au-
thorities have properly treated the matter under our statutes, in
making the assessment in question: they have assessed the tax
against the First National Bank of Concord, treating this corpora-

tion as the owner of the property taxed. The tax in question is therefore a tax upon United States bonds against the exclusive owner thereof.

If these same bonds were owned by an individual, or by a manufacturing or other corporation aside from a national bank; or, if they had been divided, in kind, among the stockholders of the bank, or, belonging to them, were held undivided in trust for them by some person or corporation, it is certain that they could not be taxed. The question then arises, What peculiarity is there in the nature of national banks that renders such property taxable when owned by them, whereas it is not taxable when owned by individuals or other corporations?

We have been unable to discover any such peculiarity. In fact, the character of the property itself is what renders it non-taxable, not the character of its owner or the manner of its ownership. The laws under which such bonds were issued and sold provided that they should not be taxed, no matter by whom or in what manner owned—Rev. St. U. S. 736, s. 3701—so that they would not be any more subject to taxation even if it should be held that they belong directly or indirectly to the stockholders of the bank.

The supreme court of the United States, in several cases, has decided substantially in accordance with the foregoing views; and their decisions should control in cases of this kind, as they are the tribunal of final resort, to which this and all similar cases may be taken by writ of error. See Rev. St. of U. S. 132, s. 709; *Waite* v. *Dowley*, 4 Otto 532; *National Bank* v. *The Commonwealth*, 9 Wall. 353; *Van Allen* v. *The Assessors*, 3 Wall. 573; *People* v. *The Commissioners*, 4 Wall. 244; *Bradley* v. *The People*, 4 Wall. 459;—also, see *State* v. *City of Newark*, 10 Vroom 380, a case directly in point, to which we ask special attention.

*C. P. Sanborn*, for Concord, furnished no brief.

Doe, C. J. The shares of a national bank are taxable at their value, which is the value of the whole capital, including the reserve and other surplus, whether invested in United States bonds or not. Of that part of the plaintiffs' property, for some purposes called surplus, amounting to more than $70,000, more than $30,000 was not taxed; and the plaintiffs contend that the tax of the other $40,000 should be abated, because, in the assessment, and in the state law, the property is not called by its right name. On this appeal from the refusal of the assessors to abate the tax, it is the duty of the court to make such order as justice requires. G. L., c. 57, s. 12. This statute throws a light upon the construction of other statutes of taxation, and disposes of the question of nomenclature raised in this case by carrying into effect the constitutional principle that taxation is an equal division of the public burden. The

court is not authorized to make an order of abatement that would violate the constitutional right of the other tax-payers of Concord by transferring to them a part of the burden of the plaintiffs' stockholders. *Morrison* v. *Manchester*, 58 N. H. 549, 550; *Edes* v. *Boardman*, 58 N. H. 580, 584, 586, 587, 589; *Carpenter* v. *Dalton*, 58 N. H. 615. Justice does not require that this tax, which is less than four sevenths of what it ought to be, should be paid by the plaintiffs' neighbors.

*Appeal dismissed.*

FOSTER and BINGHAM, JJ., did not sit: the others concurred.