Coös,
Oct. 7, 1930.

THE BRETTON WOODS COMPANY *v.* CARROLL.

*Shurtleff & Hinkley (Mr. Hinkley* orally), for the plaintiff.

*Edgar M. Bowker* (by brief and orally), for the defendant.

PEASLEE, C. J.  The nature and extent of the remedies afforded to taxpayers for the correction of errors in the assessment of taxes has been much discussed in the cases, and varying and inconsistent conclusions have been reached.  The decision in *Edes* v. *Boardman*, 58 N. H. 580 established the rule which has ever since been followed that as to "any error correctible on appeal" (*p.* 594) the remedy by a petition for abatement is exclusive.  It did not consider the question of what errors are so correctible.

Cases before *Edes* v. *Boardman, supra*, held that one who has paid a tax illegally assessed may recover it back from the town in an action of assumpsit.  *Ib.* 591.  That decision established for this jurisdiction the rule that the remedy by petition for abatement abolished the common-law action to recover back taxes paid.  But it did more than that.  It also elaborated the long recognized theory that in abatement proceedings only equitable relief could be afforded.  While this second proposition has been restated in several later cases (*Carpenter* v. *Dalton*, 58 N. H. 615; *Perley* v. *Dolloff*, 60 N. H. 504; *Fowler* v. *Springfield*, 64 N. H. 108; *Connecticut &c. Co.* v. *Monroe*, 71 N. H. 473), it has been overlooked in others, wherein relief in other forms of proceeding has been denied upon the ground that legal, but inequitable, relief could be had on a petition for abatement.

The instant case presents an issue as to the validity of votes of the town making appropriations, and the enforceability of an assessment made in pursuance of such votes.  May the individual taxpayer, in his individual appeal, obtain individual relief because of such a defect?  There are two cases decided since *Edes* v. *Boardman, supra*, which are based upon the idea that he can.

*Rowe* v. *Hampton*, 75 N. H. 479, was a bill in equity to restrain the collection of a tax assessed in 1909, to pay for appropriations voted and laid out in 1908.  The bill was dismissed upon the erroneous

theory that the validity of the appropriation could be successfully attacked upon a petition for abatement, and also for the reason that equity will not interfere in such a situation to restrain the collection of a tax. *Perley* v. *Dolloff*, 60 N. H. 504, is cited to sustain both propositions. It is authority for the second ground for dismissal, but not for the first; for, although it states that the petitioner would have a remedy in abatement proceedings, it goes on to point out that such remedy would be of no avail because only an equitable order could be made, and relief of the petitioner at the expense of others, already equally wronged, would be inequitable.

The order made in *Rowe* v. *Hampton*, *supra*, is sustainable on the second ground stated; but the first ground appears to us to be unsound, although supported by a prior decision. *School District* v. *Carr*, 63 N. H. 201.

In the case last cited, the application of individual taxpayers to intervene, in a dispute over the effect of defective district votes upon the duty of the selectmen to assess the district tax, was denied in the following terms: "The taxpayers have an ample and appropriate remedy for the correction of errors of law or of fact by an appeal from the assessment (*Edes* v. *Boardman*, *supra*), and there is no occasion or necessity for allowing them in this proceeding to obstruct the course of public education, suspend the legitimate business of the school-district, and defeat the purposes for which it was created, by delaying the assessment and withholding needed funds until all questions affecting the legality of the votes can be judicially determined." *Ib.* 206. This argument leaves wholly out of consideration what might happen when the suggested appeals from the assessment were taken. Those who appeal would obtain piece-meal relief. If all appealed, the district would be impoverished as much as by the direct method of correcting the error at the outset, before it had run its course of assessment, collection and expenditure of the illegal tax.

In *Keene* v. *County*, 79 N. H. 198, it was stated *arguendo* that where county taxes had been improperly apportioned among the towns the individual taxpayers "had a sufficient remedy by appeal." *p.* 200. But later in the same paragraph, when speaking of other corrective measures, the conclusive negation of such remedy by appeal was given. "It will not be granted when the effect would be not to cure the wrong, but merely to transfer the injury to other parties." *Ib.*

Abatement proceedings cannot afford any real and equal remedy for such errors. Either they would relieve the petitioning taxpayers at the expense of those who did not apply for an abatement; or, if all

applied, it would not affect the improper expenditure, but merely leave a deficit in the municipal treasury, which would have to be made good by later taxation. It was for these reasons that it was decided in *Perley* v. *Dolloff*, 60 N. H. 504, that a complaint that the assessment was illegal as a whole was no ground for granting a petition for abatement. Abatements are granted "upon strictly equitable principles only," and "equity requires that he should not be relieved from his proportionate share of the common burden of taxation at the expense of the other taxpayers." *Ib.* 505.

This decision correctly indicates the true line of demarcation between what can and cannot be taken advantage of in this proceeding. The question to be tried is whether the petitioner is unlawfully or unjustly taxed as between him and the other taxpayers. If he is, the error is one correctible on his appeal. If he is not, if the error is one common to all, he has no remedy here. The true issue in a tax abatement appeal is the plaintiff's tax liability, and not the validity of the appropriations made by the town and included in the assessment. *Page* v. *Portsmouth*, 76 N. H. 372.

It is true that the plaintiff sets up a just cause for complaint. Relief is not denied upon the ground that no wrong has been done, but because it is not equitable that he transfer his wrong to other innocent parties. Relief is not denied because the subject-matter is not open for consideration, but because consideration thereof establishes the proposition that the order asked would be an inequitable one, and therefore not within the power of the court to make. ". . . the court is only authorized to 'make such order thereon as justice requires'." *Perley* v. *Dolloff*, 60 N. H. 504. As said in *Fowler* v. *Springfield*, 64 N. H. 108, 109: "In this proceeding only so much of a tax is abated as in equity ought not to be paid, however erroneous in law or in fact the assessment may be."

It does not follow from this that a taxpayer is without remedy for such a wrong. By a seasonable proceeding he may restrain the assessment of an illegal tax or the expenditure of an unauthorized appropriation. *Clough* v. *Verrette*, 79 N. H. 356, 359, and cases cited. Action so taken affects all taxpayers alike. It is an appropriate remedy and produces equitable results.

Such wrong as exists in an invalid appropriation is committed against the taxpayers as a body. It is not to be dealt with as the individual grievance of one. While a single taxpayer may institute and carry on the litigation, the results inure to the benefit of all. This is the orderly and equitable mode of dealing with the subject.

It affords an ample remedy, available to everyone, and it does not open the door for one to take an inequitable advantage of the rest.

In another aspect of this matter, a different conclusion would develop a most illogical situation. A direct proceeding to attack and defeat the illegal action *in limine* must be taken very promptly. *Perry* v. *Fitzwilliam*, 64 N. H. 289; *Keene* v. *County*, 79 N. H. 198. If delayed until the tax has been assessed and expenditures have begun, it comes too late. *Chamberlain* v. *Lyndeborough*, 64 N. H. 563; *Parker* v. *Concord*, 71 N. H. 468. But, if the wrong can be adjusted in abatement proceedings, the action need not be initiated until after the tax has been assessed, largely collected and probably expended. That is, a real and equitable remedy is barred while a partial and inequitable one is not. Such an inconsistency ought not to be tolerated save for cogent reasons. Much less should it be sanctioned when the great weight of reason is against it.

It may be added that in the many reported decisions in this state involving tax abatements none has been found wherein an abatement was granted for any cause similar to the one here relied upon. In so far as *School District* v. *Carr*, 63 N. H. 201, and *Rowe* v. *Hampton*, 75 N. H. 479, hold that relief may be so obtained, they are overruled.

If this proceeding were amended into a petition to enjoin, it would not avail the plaintiff. Such a petition must be seasonably filed. The expenditures having been made, the application would come too late. *Chamberlain* v. *Lyndeborough*, 64 N. H. 563; *Parker* v. *Concord*, 71 N. H. 468. Moreover, this plaintiff has already had the benefit of that remedy. It filed its petition to enjoin the assessment and expenditure. A trial of the facts was had, and a final decree dismissing the bill was entered.

The present appeal was properly dismissed. The stated ground for complaint does not constitute the "good cause" (P. L., c. 64, s. 13) required in an abatement proceeding; and a direct attack upon the action of the town is barred by the adverse decision upon the earlier application. It would also be barred by laches, if instituted by way of amendment to this petition.

*Exception overruled.*

All concurred.